In the Matter of EDWARD PIRSIG FARMS, INC., Debtor.

EDWARD PIRSIG FARMS, INC., Plaintiff,

v.

JOHN DEERE COMPANY, Defendant and Third Party Plaintiff,

v.

CONTINENTAL ILLINOIS NATIONAL BANK & TRUST OF CHICAGO and First National Bank of Elmore, Third Party Defendants.

Civ. No. 4–84–404.

United States District Court, D. Minnesota, Fourth Division.

Aug. 6, 1984.

Elizabeth L. Zerby, Kampf, Orey, Landsman, Seesel & Zerby, P.A., St. Paul, Minn., for plaintiff.

Steven J. Kluz, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for defendant and third party plaintiff.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This action arises from a voluntary Chapter 11 bankruptcy proceeding by Edward C. Pirsig Farms, Inc. (Debtor). The matter is presently before the court upon the motion of John Deere Company (Deere), a secured creditor, to withdraw reference of this case to the bankruptcy court. Pending decision by this court on Deere's motion, Deere requests a stay of Adversary Proceeding No. 84–0034, which is entitled *Edward Pirsig Farms, Inc. v. John Deere Company v. Continental Illinois National Bank & Trust of Chicago and First National Bank of Elmore.* Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1471(a) and clause (c)(2) of the Emergency Bankruptcy Rule (Emergency Rule) dated December 21, 1982 adopted by the judges of this court.

Debtor filed a voluntary petition in bankruptcy on December 19, 1983. At the same time, debtor filed a motion with the bankruptcy court seeking an order allowing the debtor to use cash collateral of the First National Bank of Elmore and Continental Illinois National Bank and Trust of Chicago (banks), who were creditors of debtor. Af-

ter three days of testimony, the banks entered into an agreement with debtor which permitted the debtor to use proceeds of the sale of the debtor's 1983 crop and livestock in accordance with a Stipulation approved by order of the Bankruptcy Judge John Connelly dated January 23, 1984.

As part of the agreement between debtor and the banks, the debtor agreed to file the adversary proceeding now before this court to avoid the unperfected lien of Deere[1] pursuant to section 544(a) of the Bankruptcy Code.[2] The debtor then used the benefits of its right to avoid the liens to provide the banks with adequate protection for use of the proceeds of the banks' collateral, the 1983 crops.

Deere contends that its security interest may not be avoided. Deere argues that 11 U.S.C. § 544(a)(1) is unconstitutional as applied to it, that Congress did not intend § 544(a)(1) to be used to provide a windfall for the sole and exclusive benefit of a subordinate creditor, and that general principles of equity and 11 U.S.C. § 105 should operate to prevent what it deems to be an unjust and inequitable result. Deere argues that because it is challenging the constitutionality of a federal statute, the Bankruptcy Court may not exercise jurisdiction over the case, and that this court must therefore withdraw its reference to the bankruptcy court pursuant to clause (c)(2) of the Emergency Rule.

On July 10, 1984, while this matter was pending before the court, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law No. 98-353, 98 Stat. 333 (Bankruptcy Amendments) was signed into law. The Bankruptcy Amendments reestablished bankruptcy court jurisdiction and replaced the since expired Emergency Rule upon which Deere had based its motion for withdrawal of reference. The provisions relating to jurisdiction became effective immediately. On July 27, 1984, Chief Judge Lord signed an order referring all bankruptcy cases and related proceedings to the Bankruptcy Judges for the District of Minnesota pursuant to the Bankruptcy Amendments.

A portion of the Bankruptcy Amendments amended Title 28 of the United States Code and added sections 151–158. Section 157 divides the matters referred to the bankruptcy court into two categories: core and non-core proceedings. 28 U.S.C. § 157. Bankruptcy judges may hear and determine all matters in core proceedings[3]

---

1. Deere's security interest arises from the sale, by two of its dealers, of numerous pieces of farm equipment to debtor. As of February 1, 1984, the total payoff owed to Deere on these sales agreements was $581,359.21. While Retail Installment Contract-Security Agreements and UCC Financing Statements were prepared and executed with respect to all the equipment, the Financing Statements were incorrectly filed with the Faribault County Recorder rather than the Minnesota Secretary of State as required by Minn.Stat. § 336.9–401. Accordingly, the debtor contends that Deere's security interest in the equipment was not properly perfected.

2. Section 544(a)(1) of the Bankruptcy Code, commonly called the "strong arm clause", grants the trustee the rights and powers of a hypothetical lien creditor with respect to the property of a debtor as of the date of the bankruptcy petition. Section 544(a)(1) provides as follows:

   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time with and respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists.
   11 U.S.C. § 544(a)(1). As a hypothetical lien creditor, the trustee has the absolute power to avoid those interests in property belonging to the bankruptcy estate against which a lien creditor is superior.

3. Section 157(b)(2) states that core proceedings include but are not limited to the following:
   (A) matters concerning the administration of the estate;
   (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful

subject to review only by the district court upon appeal pursuant to § 158. *Id.* at § 158. Bankruptcy judges may also hear non-core proceedings, but must submit proposed findings of fact and conclusions of law to the district court. *Id.* at § 157(c)(1). A final order may be entered only by the district court and only after considering the bankruptcy court's proposed findings of fact and conclusions of law and conducting a de no vo review. *Id.* The bankruptcy judge is to determine whether a proceeding is a core proceeding, either on the judge's own motion or at the request of a party. *Id.* at § 157(b)(3).

Withdrawal of reference to the bankruptcy court is governed by section 157(d), which provides as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*Id.* at § 157(d).

Defendants admit that the second clause of section 157(d), which requires mandatory

withdrawal, is not relevant to this matter. Neither Deere nor the debtor are alleging that a federal law regulating commerce is to be considered. Accordingly, this court may withdraw reference only "for cause shown."

Deere's sole basis for requesting withdrawal is its contention that the bankruptcy court may be required to consider the constitutionality of a provision of the bankruptcy code. Deere's constitutional challenge, however, arises only if the bankruptcy court determines that the application of 11 U.S.C. § 544 to its liens requires their avoidance. The bankruptcy court is clearly in the best position to make this factual determination. Should the bankruptcy court's determination raise constitutional questions, Deere will have the opportunity to raise such issues upon appeal to the district court. Given these circumstances, Deere has failed to show cause why this matter should be withdrawn from the bankruptcy court.[4]

## ORDER

Accordingly, based on all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the motion of defendant and third party plaintiff to withdraw reference of this matter to the bankruptcy court is denied.

---

death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims

brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
28 U.S.C. § 157(b)(2).

4. Deere's contention that bankruptcy courts are without jurisdiction to determine the constitutionality of its own acts and provisions of the bankruptcy court does not find support in the majority's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In their concurring opinion, Justice Rehnquist and Justice O'Connor held unconstitutional only so much of the Bankruptcy Code of 1978 as enabled the bankruptcy court to consider the purely state law claims raised in *Northern's* lawsuit. *Id.* at 2881–82.